| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 15-cr-228-pp |
| Plaintiff, | |
| v. | |
| KEYCIE STREET, | |
| Defendant. | |

**ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. NO. 34)**

On November 17, 2015, the defendant and two others were indicted on charges relating to robbery affecting interstate commerce, using and brandishing a firearm during a crime of violence, and (in the case of co-defendant Oliver), being a felon in possession of a firearm. Dkt. No. 19. On January 6, 2016, defendant Street filed a motion to suppress any and all information investigating officers obtained from the defendant when they spoke with him in the parking lot of a store that had just been robbed. Dkt. No. 34. Judge David Jones recommended, on March 28, 2016, that this court deny the motion to suppress. Dkt. No. 51. The defendant filed an objection to that recommendation, Dkt. No. 53, the government responded, Dkt. No 54, and the motion now is before this court. The court agrees with Judge Jones, and denies the motion to suppress.

Judge Jones' March 28, 2016 order lays out the relevant facts. The crux of the disputed issue is as follows: On October 24, 2015, officers received a

1

report that two black males had robbed a Verizon store at gunpoint. Dkt. No. 51. The report described the two as wearing black clothing—hooded sweatshirts—and indicated that one was armed. The report indicated that the men took cash and some thirty cell phones. Id. at 2. One of the stolen phones had a GPS tracking device, which allowed officers to trace the phone to a Walmart store. Id. Responding officers observed a white SUV with Massachusetts plates parked at the store, with its doors and hatch open. This allowed officers to see cell phones, a cash register, currency and a gun inside. Id. at 3. One officer believed he originally saw three individuals get out of the white SUV; the officers apprehended one individual as he fled on foot. Other officers set up a perimeter around the store, blocking store exits and locking down the perimeter of the lot. Id. The officers then ordered everyone to leave the store; in the process, the officers apprehended a second suspect walking west. Id.

At this point, the officers had two individuals in custody; the original report had indicated that two individuals had robbed the Verizon store. But, because one officer believed he'd seen three people get out of the white SUV, the officer continued to "contain" the store, believing that perhaps there was a third person who acted as a "getaway" driver. Id. The officers did not, however, have specific information about a third person. Id.

Although they ordered everyone in the store to leave, the officers did not try to stop or interrogate anyone; people were allowed to walk around in the parking lot. Id. One of the officers manning an exit observed someone—the only

2

black male in the crowd—wearing jeans and a gray shirt (not a hoodie). Id. at 4. The officer testified that this individual stood out, because he was walking straight ahead, holding a cell phone, and not making eye contact with anyone else. The officer testified that everyone else was "just walking and looking around." Id. In contrast, another officer testified that the only thing that stood out about this individual was that he was the only black male who walked out of the store. During the evidentiary hearing, Judge Jones viewed the surveillance footage, which confirmed nothing suspicious in the individual's behavior. Id.

The second officer was directed to make contact with this individual, because, he was told, the individual matched the description of the other two subjects. The officer—Deputy Knipfer—made contact with the individual, who at that time was walking through the parking lot, carrying a small Walmart bag. Id. Deputy Knipfer told the suspect that he was investigating a robbery, and wanted to rule out the individual as a suspect. The individual identified himself as Keycie Street. He told Deputy Knipfer his address and cell phone number; he did not have a driver's license or other identification card. Id. Street told Knipfer that he was from Illinois, and that some friends had dropped him off at the store to pick up a video game, which he had in the bag. Id. at 4-5. Street told the deputy that his friends were going to pick him up after they got some food. Knipfer confirmed the information the defendant had given him with dispatch, and made sure there were no warrants outstanding for the defendant. He then told the defendant that the defendant was free to

3

leave. Id. at 5. The encounter lasted ten to fifteen minutes, during which time the defendant was very cooperative. It does not appear that officers stopped any other individuals leaving the store. Id.

After Knipfer told the defendant that he was free to leave, officers learned from Walmart employees that the surveillance video of the parking lot did, indeed, show three people getting out of the white SUV; one of those individuals was the defendant. The officers then tried to find the defendant in the parking lot, but could not. The defendant was arrested on a warrant the day after Judge Jones issued the criminal complaint. Id.

The defendant's motion alleges that the encounter in the Walmart parking lot constituted an unlawful seizure under the Fourth Amendment. He argues that a reasonable person would not have felt free to leave the conversation with Deputy Knipfer, and that the officers had no reasonable suspicion for believing that he had committed a crime, or was about to. The government conceded at the evidentiary hearing that the encounter between the deputy and the defendant constituted a seizure; the parties did not dispute that the encounter was not an arrest. Id. at 6. The questions Judge Jones considered were whether the officers had reasonable suspicion to detain the defendant in the Walmart parking lot, and, if that detention violated the Fourth Amendment, whether any evidence that resulted from the detention should be suppressed. Id.

Judge Jones, having both reviewed the pleadings and heard and seen all of the evidence presented at the evidentiary hearing, concluded that the officers

4

did not have sufficient reasonable suspicion to stop the defendant in the Walmart parking lot; this court agrees. At the time the officers stopped the defendant, they had a report that two males had robbed the Verizon store, and they had two males in custody. They had information that the males who'd robbed the store were wearing black hoodies; the defendant was not wearing a black hoodie. Even if the officers' experience told them that it was likely that there was a third individual involved in the Verizon robbery (a driver), they had no description of such a person. As Judge Jones pointed out, the driver might well have been one of the individuals the officers already had apprehended. There may have been only two people involved in the robbery—the driver might have gone into the store along with his companion. It appears that the officers stopped the defendant—as opposed to anyone else who wandered out of the store with a Walmart bag—solely because he was black. This fact assumes that if the two individuals who committed the Verizon robbery were black males, anyone else who might have been in the vehicle must have been a black male. An assumption—as Judge Jones called it, a "hunch"—is not enough to create reasonable suspicion, or to justify a stop under <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968).

     The other reason the officers gave for stopping the defendant was that one officer testified that he was walking straight ahead, holding a cell phone to his ear and not making eye contact with anyone. As Judge Jones found, however, these facts, in and of themselves, are not suspicious; indeed, Deputy Knipfer testified that all he saw was a man walking out of Walmart carrying a

5

bag and talking on his phone. There is nothing in that behavior to support a suspicion of criminal behavior. Judge Jones also found that the surveillance video from the Walmart lot showed the defendant looking around—looking at an older woman in a scooter, fidgeting with his bag, looking at his receipt. He was not, as the officer at the entrance had stated, walking straight ahead and avoiding eye contact.

Judge Jones made clear that he was not implying that the officer at the exit (Deputy Niles) had falsified his testimony. Dkt. No. 51 at 12. Judge Jones found Deputy Niles credible, but mistaken. Nor did Judge Jones find that Deputy Niles was motivated by racial bias; simply that he made an assumption that was not supported by record evidence.

For all of the reasons Judge Jones stated, this court agrees that Deputy Knipfer's stop of the defendant violated the Fourth Amendment.

Judge Jones concluded, however, that the attenuation doctrine articulated by the Seventh Circuit in <u>United States v. Carter</u>, 573 F.3d 418 (7th Cir. 2009) foreclosed suppression of the evidence. <u>Id.</u> at 19. The information the officers obtained from the defendant consisted of his name and his address. After the defendant was told he was free to go, the officers saw the parking lot surveillance video which showed a third man getting out of the white SUV. The officers obtained the defendant's Illinois driver's license photo, and several people—including co-defendant Oliver—identified the photo as the defendant. Judge Jones found that the officers' decision to obtain a driver's license photo of the third man in the van was an event attenuated from the illegal detention.

6

Further, co-defendant Oliver voluntarily provided information about the third suspect—he asked the investigating detective if the detective had a photo of the third individual, and when the detective produced the defendant's photo, Oliver voluntarily identified the defendant and described his role (as the "mastermind") in the Verizon robbery. Id. at 20. Judge Jones found this to be an intervening event, as well.

Judge Jones also found that the fact that the defendant was not arrested until almost two weeks after the encounter in the parking lot, with numerous intervening events (viewing of the surveillance video, obtaining of the defendant's photo, identification of the defendant by Oliver), demonstrated that the officers' identification of the defendant, and eventual verification of his role in the robbery, was significantly attenuated from the contact in the Walmart parking lot. Id. at 21.

Finally, Judge Jones concluded that the police would have discovered the defendant's name and address—the only two pieces of information they obtained during the illegal stop—regardless of the stop itself; in other words, Judge Jones found that the "inevitable discovery" doctrine prohibited exclusion of the evidence. Id. at 21; United States v. Marrocco, 578 U.S. F.3d 627, 637 (7th Cir. 2009) (quoting Nix v. Williams, 467 US. 431, 444 (1984)). This court agrees. Even if Deputy Niles never had stopped the defendant in the parking lot, the officers would have seen the surveillance video, and would have learned that there had been three people, not two, in the van. They would have investigated the identity of that third individual—they would have obtained a

7

still photo of the defendant exiting the SUV, would have talked to Oliver, would have identified the defendant. This would have led to the defendant's being charged in Waukesha County Circuit Court (Dkt. No. 51 at 20), which would have led to the federal warrant for a swab of the defendant's DNA (id. at 21), which would have matched the DNA on the juice bottle found inside the abandoned SUV (id.). The stop, though illegal, was not the event that provided the evidence that supported the defendant being charged in state or federal court.

For all of these reasons, the court **ADOPTS** Judge Jones' March 28, 2016 recommendation (Dkt. No. 51), and **DENIES** defendant Street's motion to suppress. Dkt. No. 34.

The court reminds the parties that the final pretrial conference is scheduled for June 2, 2016 at 1:00 p.m. in Room 225, and that the trial is scheduled for June 13, 2016.

Dated in Milwaukee, Wisconsin this 16th day of May, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge